IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **RESOLUTION HOLDING COMPANY, INC.** <br> 100 Corporate Drive, Suite 300 <br> Fort Lauderdale, Florida 33334 <br><br> *Plaintiff,* <br><br> v. <br><br> **DAVID DIERBERGER** <br> Serve: David Dierberger <br>         104 Seekright Drive <br>         Yorktown, Virginia 23693 <br><br> *Defendant.* | Judge <br><br> Civ. Action No. 1:15-cv-1539 <br> JCC/JFA |

FILED NOV 17 2015 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## COMPLAINT

COMES NOW the Plaintiff, Resolution Holding Company, Inc. (hereinafter "RHC"), by counsel and in support of its Complaint seeking judgment against Defendant David Dierberger (hereinafter "Dierberger"), respectfully states as follows:

### NATURE OF ACTION

RHC seeks legal and equitable remedies against Defendant Dierberger in connection with alleged monies wrongfully received as a result of the misrepresentation of the nature of Dierberger's, ownership in multiple companies that formed the basis of the grant of ownership in RHC to Dierberger.

### PARTIES

1. Plaintiff RHC is a Florida corporation with a principal place of business at 100 Corporate Drive, Suite 300, Fort Lauderdale, Florida 33334. RHC is a successor in interest to

1

Avalon Global Solutions, Inc. (hereinafter "AGS") and was formed after the sale of AGS to act as the wrap-up entity to receive the payments due under the transaction through which AGS was sold.

2. Defendant Dierberger is a resident of Yorktown, Virginia. Dierberger received payments from RHC as a result of his alleged status as a shareholder in RHC.

## JURISDICTION AND VENUE

3. This Court maintains diversity jurisdiction over the subject matter of this case due to the fact that the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court maintains personal jurisdiction over the Defendant because he resides in the Commonwealth of Virginia and used banks within this Commonwealth in furtherance of his scheme to wrongfully retain funds provided to him from RHC and from its precursor entities.

5. Venue in this Court is proper under 28 U.S.C. § 1391(b) because certain of the conduct at issue in this matter, including the banks used to further the scheme by the Defendant, has locations within this district.

## FACTS COMMON TO ALL COUNTS

6. Stretching back for almost two decades, Dierberger and Joseph Chopek (hereinafter "Chopek"), a principal in RHC and multiple previous companies, have worked together as Chopek founded, funded and built companies into successful enterprises that grew by both merger and acquisition.

7. As such growth took place, Chopek often rewarded employees with the opportunity to buy-in to each company, to participate in leadership of said company in the form of being officer

and director, with their ownership being rendered at significantly reduced sums as an acknowledgement of the impact their efforts had on the companies' growth.

8. Dierberger was one such employee who received this opportunity to buy shares in Chopek's High Tech Holdings, Inc. ("HTH"). These shares would later convert into ownership in derivative or "spin-off" entities, Business Enterprise Partners, Net Results, Inc., The Net Results Self Liquidating Tax Trust, The Net Results Group, Inc., Avalon Global Solutions, Inc., and finally Resolution Holding Company, Inc...

9. At all times relevant to this matter, Dierberger was the Secretary and Treasurer of HTH and Keith Smith was its President. Chopek was the largest shareholder in HTH.

10. Dierberger acted a both an officer and a Director of High Tech Holdings, Inc.

11. In that role, Dierberger had control of the corporate books and records from 2006 through 2009, and was custodian of same and the only corporate oversight came from Smith.

12. Dierberger was also and officer and director of two of the successor entities, Net Results, Inc. and The Net Results Group, Inc.

### *The Initial Buy-in*

13. On or about 2003, a company named High Tech Holdings, Inc. (hereinafter HTH) was formed by multiple individuals, including Chopek.

14. For a period of time roughly 2003 into 2006 HTH also owned a company called Net Results, Inc. (herein after "NRI").

15. In late 2005 NRI agreed to join with Communications Advisors Inc, (herein after called CAI) to form the Net Results Group (herein after called NRG).

16. As a part of the melding of NRI and CAI to form NRG, Dierberger and Smith also became Directors of NRG and continued to keep the bank accounts and the books and records of all of the entities: HTH, NRI and NRG.

17. In February 2006, as a part of the melding to form NRG, Smith was given the opportunity to increase his shares in HTH, which were previously acquired through a valid sale and investment and Dierberger presented with the opportunity to purchase shares of HTH.

18. From its formation, and at all times relevant to this matter, Dierberger was the Secretary and/or Treasurer of HTH and Keith Smith was its President. Chopek was the largest shareholder in HTH either personally or via other entities which he owned and controlled.

19. On February 12th, 2006 Dierberger was provided the option to purchase 7500 shares of HTH stock at a price of $ 0.10 (ten cents) per share for a total transaction cost of $750.

20. Simultaneously, Keith Smith was provided the option to purchase 5,000 shares of HTH stock at a price of $ 0.10 (ten cents) per share for a total transaction cost of $500.00.

21. Pursuant to the terms of the offer, shares were to be issued by Smith and Dierberger only at such time as the purchase price was paid and certain documents were executed by them.

22. Smith and Dierberger continued on a the sole officers of HTH, kept the financial records, signed checks and kept the books and records of HTH for four years until 2010. It was not until several years later that it was discovered that but neither Smith nor Dierberger ever paid for their February 2006 HTH share acquisition.

23. A review of the corporate records indicates that while neither Smith nor Dierberger made payment for the shares, they each issued the February 2006 shares in HTH as if such payments were made.

24. As purported shareholders of HTH, Dierberger and Smith regularly received and benefitted from shareholder distributions while, as officers of the corporation, they hid their failure to pay for their shares from their fellow shareholders.

25. This action continued for some time until, mid 2006 when Chopek, NRG, HTH and NRI executed the spin-off from HTH of various entities as evidenced in the Road Map memos attached hereto. As a result of this action, Keith Smith surrendered his shares in HTH and Dierberger assumed some of those shares, and the rights associated therewith, without disclosing to other shareholders and directors that Smith had failed to pay for all of the shares that were purportedly transferred to Dierberger. At no time did Dierberger disclose his failure to pay for his shares and even though he was Treasurer and/or Secretary of HTH and other of the spin-off entities.

26. As Treasurer for HTH, Dierberger was responsible for both the receipt of initial stock purchase deposits and the maintaining of the corporate financial records.

27. A time came in late 2005, when a new venture was formed by Chopek and others of CAI, named Net Results Group, Inc, (hereinafter "NRG") a Nevada Corporation which was a precursor company to Avalon Global Solutions and to RHC.

28. On or about August 6, 2006, Share Certificate #4 in NRG was issued to Dierberger. The issuance of this share certificate coincided with the surrender/conversion of Dierberger's purported interest in HTH as consideration.

29. The total shares in NRG issued to Dierberger as part of this transaction represented a total interest in NRG of 3.95%.

30. In or about February 2009, Chopek and other investors formed Avalon Global Solutions, Inc., a Florida Corporation (hereinafter "AGS").

31. Dierberger was actively employed as a part of AGS from the time of its formation. On or about February 11th, 2009, Dierberger executed a Mutual Release of All Claims In Addition to the Shareholder's Buy-Sell Agreement. (Attached hereto and incorporated herein as Exhibit "A")

32. On or about April 11, 2009, Dierberger entered into a Restricted Stock Share Purchase, Buy-Sell & Shareholder Agreement (hereinafter the "AGS Agreement") with AGS.

33. Pursuant to the AGS Agreement, the consideration for the issuance of Dierberger's shares in AGS was comprised of two components. The first was the trading of his Shares in NRG, as evidences by NRG Certificate #4. The second was payment of one tenth of One Cent per share for 195,394 shares, or $194.50.

34. The total consideration was fixed based on Dierberger's purported interest in NRG which was to be surrendered and converted.

35. Dierberger' s purported interest in NRG was based, in whole or in part, on the surrender of his purported interest in HTH for his interest NRG.

36. Dierberger never paid for, and improperly issued, his interest in HTH.

37. Dierberger did pay the sum of $194.50 to AGS; however that mere consideration was a mere ministerial payment and did not form material consideration for the issuance of the AGS shares, absent the ownership in NRG.

38. On or about April 26, 2009, Dierberger executed a Mutual Release of All Claims In Addition to the Shareholder's Buy-Sell Agreement wherein Dierberger agreed to trade all his Net Results Group Stock/shared to and for AGS Stock, which he agreed was the complete and final consideration for the issuance of the AGS stock certificates. At that time and as held out by

Deirberger and Smith, the HTH books and records were correct and complete and they had in fact paid for their shares in HTH and thus by derivative their ownership in NRG not paid for.

39. Dierberger never justly owned his purported shares in HTH and NRG and other split off or successor entities, because the factual predicate to his ownership therein was lacking.

40. As alleged above, Dierberger and/or Keith Smith improperly issued share certificates to Dierberger because Dierberger failed to meet the prerequisites to any share issuance.

41. Dierberger and Smith failed to disclose this at any point prior to the sale of new AGS shares and issuance of AGS stock to Dierberger.

42. On or about August 31, 2009, an additional 158,177 shares of AGS were issued to Dierberger based upon the belief a requirement that Dierberger was a shareholder in good-standing with NRI, NRG and AGS.

43. The depth of Dierberger's misrepresentations came to light in 2011, when Dierberger filed suit against HTH and NRI in the Circuit Court of the City of Hampton, Virginia, alleging, among other things, that he never surrendered his shares in HTH and that he was still a bona fide owner of HTH.

44. While RHC disagrees with the position taken by Dierberger and asserts that he purported to convert his interest in HTH as detailed above, no such interest existed because of Dierberger and Smith's act to conceal the lack of payment. If, as claimed by Dierberger, he retained an interest in HTH, he would be precluded from asserting an interest in AGS, and later RHC, because the surrender of such an interest was one of the factual and financial predicates to the issuance of his interest in AGS.

45. In or about December, 2011 AGS filed a legal name change, converting its name to Resolution Holding Company, Inc., (hereinafter "RHC") to reflect its new role, in wrap up, after AGS was acquired and merged with another entity.

46. From April 2009 through April 2013, Dierberger improperly received shareholder distributions in a total amount of $265,433.79 AGS, and later RHC.

47. Upon the determination that Dierberger improperly represented his ownership interest in HTH to gain his interest in NRG, which formed the basis of consideration for his interest in AGS and later RHC, Dierberger was informed that he would no longer receive distributions as a shareholder for RHC and demand was made for repayment of all funds improperly paid to him as a result of these misrepresentations.

48. As of the date of this pleading, Dierberger has failed to repay any sums that he received improperly.

## COUNT I – RESCISSION

49. RHC restates the allegations articulated in Paragraphs 1 – 48 and incorporates them as if stated herein.

50. Dierberger knew or should have known his consideration for the issuance of AGS shares was lacking as a result of his knowing or negligent misrepresentation as to his predicate ownership interest.

51. At a minimum, as of July 28, 2011, Dierberger cemented the failure of his consideration for the issuance of his interest in AGS by asserting in Court pleadings that he retained all interest in HTH, thus negating his interest in NRG which formed the basis of his consideration for the issuance of his interest in RHC.

52. The exchange of Dierberger's RGS shares represented the main form of consideration for the issuance of shares in AGS to Dierberger.

53. When consideration is so lacking that the failure of such consideration frustrates the purpose of the parties' agreement, the only remedy is to place the parties in the *status quo ante.*

54. In the present matter, the *status quo ante* would be the rescission of the AGS stock purchase agreement, the return of the $193.50 paid by Dierberger by RHC, and the repayment of all sums issued by AGS to Dierberger over the course of his purported ownership of AGS and RHC.

55. In light of the above, Dierberger is indebted to RHC in the amount of at least $265,433.00.

WHEREFORE, Plaintiff Resolution Holding Company, Inc. respectfully prays that judgment be entered in its favor and against Defendant David Dierberger in the sum of at least $265,433.00 or such greater amount as proven at trial, plus costs, pre-judgment interest, and post-judgment interest thereon.

### COUNT II – UNJUST ENRICHMENT (pled in the alternative to Count I)

56. RHC restates the allegations articulated in Paragraphs 1 – 55 and incorporates them as if stated herein.

57. Dierberger knew or should have known that he was not a shareholder in good standing in relation to RHC.

58. Despite such knowledge, Dierberger accepted, negotiated, and retained payments as a shareholder in RHC.

59. Due demand for repayment was made to Dierberger and Dierberger has ignored those demands.

60. Dierberger has been unjustly enriched in the amount of $265,433.00 or more to the detriment of RHC and its shareholders.

WHEREFORE, Defendant Resolution Holding Company, Inc., in the alternative to Count I, respectfully prays that judgment be entered in its favor and against Defendant David Dierberger in the sum of at least $265,433.00 or such greater amount as proven at trial, plus costs, prejudgment interest, and post-judgment interest thereon.

## COUNT III– CIVIL THEFT

61. RHC restates the allegations articulated in Paragraphs 1- 60 and incorporates them as if stated herein.

62. At the time of his representations to AGS through his trade of NRG stock for AGS stock, Dierberger knew that he had fraudulently obtained his interest in HTH and later NRG.

63. Despite this knowledge, Dierberger retained shares in AGS and knowingly retained the benefit in those shares.

64. Dierberger knowingly obtained RHC's money by and through the stock transaction and its resulting distribution, by fraud, willful misrepresentation of a past act, false promises or by false pretenses, fraud or deception, with intent to deprive them of the right to the property or the benefit there from in violation of Chapter 812, Florida Statutes.

65. These actions by Dierberger represent a felonious intent to steal RHC's funds.

66. As a result of the actions, RHC has been damaged in the amount of at least $265,433.00

67. RHC has been forced to expend significant costs and attorney's fees in the prosecution of this matter.

68. RHC is entitled to recover treble damages and its cost and attorney's fees in this matter as a result of Dierberger's actions.

WHEREFORE, Plaintiff Resolution Holding Company, Inc. respectfully prays that this Court award it treble damages in the amount of $796,299.00 or such greater amount as proven at trial as a result of the Defendant's civil theft; award it its costs and attorneys fees in bringing this action; and for such further relief as this court deems just and proper.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

Resolution Holding Company, Inc.
By Counsel

By: _____
Jason R. Collins, Esq. (VSB #65346)
Daisy & Collins, LLP
19775 Belmont Executive Plaza, Suite 500
Ashburn, Virginia 20147
Tel: (571) 262-2710
Fax: (703) 584-7354
Email: jason.collins@daisylaw.com
*Counsel for the Plaintiff*